89 Cal.Rptr.2d 437 (1999)
75 Cal.App.4th 883
In re URAYNA L., a Person Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
Kimberly L., Defendant and Appellant.
No. B129396.
Court of Appeal, Second District, Division Three.
September 16, 1999.
As Modified October 15, 1999.
Konrad S. Lee, Riverside, under appointment by the Court of Appeal, for Defendant and Appellant.
Lloyd W. Pellman, Los Angeles, County Counsel, and Doraine F. Meyer, for Plaintiff and Respondent.
CROSKEY, J.
Kimberly L. (mother) appeals from an order entered January 5, 1999, which terminated her parental rights as to her child, Urayna L., thus freeing Urayna for adoption pursuant to Welfare and Institutions Code section 366.26.[1] We affirm that order.

FACTUAL AND PROCEDURAL BACKGROUND[2]
Mother had a substance abuse problem. She had placed Urayna with a relative, but that relative died, which apparently brought Urayna to the attention of Los Angeles County Department of Children and Family Services (DCFS) when mother's twin boys were born and tested positive for drugs. Mother ended up in jail, and her children, including Urayna, became dependents of the court and were placed in foster care. Services were provided to mother, who did not complete the reunification plan. Time ran out, and the trial court terminated reunification services. Urayna was found to be adoptable, and mother's parental rights were terminated.
At the hearing at which mother's rights were terminated, the trial court had before *438 it a report which included a review, pursuant to section 366.22, subdivision (b)(2), of the amount of and nature of the contact between Urayna and her biological relatives during the time she had been a dependent of the court. This report stated that mother's visits, which were supervised, took place on an average of one or two times a month, that mother had only arranged for one of these visits, and that the others had been arranged by the maternal grandmother, who was the person prompting mother to visit. The report also noted that the minors, including Urayna, were not comfortable with mother during the visits. An earlier report had commented that grandmother was more consistent in visiting the minors than was mother, and would attend visits even if mother missed them. Mother filed timely notice of appeal.

CONTENTIONS ON APPEAL
Mother contends that the trial court failed to exercise its discretion by terminating mother's parental rights in the face of an adoption assessment which failed to report on the nature of the relationship between Urayna and Urayna's maternal grandmother. The Los Angeles Department of Children and Family Services (DCFS) disputes this contention. DCFS also contends that mother waived this issue by failing to assert her right to a more complete report below, but mother responds that because it is DCFS's burden to establish the adoptability of the minor, it did not meet that burden when it failed to assess the relationship between Urayna and her grandmother.

DISCUSSION
Section 366.22, subdivision (b), provides, in relevant part: "Whenever a court orders that a hearing pursuant to Section 366.26 shall be held, it shall direct the agency supervising the child and the licensed county adoption agency, or the State Department of Social Services when it is acting as an adoption agency in counties that are not served by a county adoption agency, to prepare an assessment that shall include: [11] ... [f] (2) A review of the amount of and nature of any contact between the child and his or her parents and other members of his or her extended family [which includes grandparents] since the time of placement."
Mother contends that because the report before the trial court at the section 366.26 hearing failed to provide any evidence about the relationship between Urayna and her maternal grandmother, the trial court failed to exercise its discretion to order that the missing, and legislatively-mandated, information be provided, and that therefore it was improper for the trial court to proceed to terminate mother's parental rights in the absence of this information.
DCFS contends that mother waived this issue by failing to assert her right to have such information included in the report, citing In re Aaron B. (1996) 46 Cal. App.4th 843, 54 Cal.Rptr.2d 27 and In re Crystal J. (1993) 12 Cal.App.4th 407, 411, 15 Cal.Rptr.2d 613; mother responds that because it is DCFS's burden to establish the adoptability of the minor, it did not meet that burden when it failed to assess the relationship between Urayna and her grandmother, so waiver is not applicable, citing In re Precious J. (1996) 42 Cal. App.4th 1463, 1475-1476, 50 Cal.Rptr.2d 385.
We conclude that by failing to raise the adequacy of the report below, mother waived this issue. The cases of In re Aaron B. and In re Crystal J. are on point, because they involved the failure to object to the adequacy of the adoption assessment.
As many courts have noted, any other rule would permit a party to trifle with the courts by standing silently by, thus permitting the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable. (In re Lorenzo C. (1997) 54 Cal.App.4th 1330, 1338-1339, *439 63 Cal.Rptr.2d 562 and cases cited there.) Here, if there had been contacts between Urayna and her maternal grandmother which were such that Urayna's adoption would have been detrimental to Urayna, which contacts were not reported, mother could have raised them herself; so, too, if the contacts which were reported were not adequately described, mother could have put on evidence of how those visits went, and what it was about them which had any bearing on the issue of termination of her parental rights. Mother's silence below signifies that she did not see anything which was not included in the reports by DCFS which might have helped her case.
In re Precious J. is distinguishable. In that case, mother waived her right to complain about the adequacy of the reunification plan by failing to object below, but did not waive her right to visitation, which is a fundamental aspect of a reunification plan. Parents' rights cannot be terminated in the absence of reunification services. (Cynthia D. v. Superior Court (1993) 5 Cal.4th 242, 248-249, 19 Cal.Rptr.2d 698, 851 P.2d 1307 [DCFS must, with certain statutory exceptions, provide family reunification services before it can propose terminating parents' rights.].) However, what the appellate court found to be reversible error was that there was no evidence in the record that DCFS had complied with that plan and provided services. The plan called for DCFS to arrange visitation between the mother and her child, and there was no evidence of visitation. DCFS contended that the record was silent on the issue of visitation because the mother did not raise the subject below, and opined that she might have waived her right to visitation while she was incarcerated. However, the record showed that mother had made her desire for visitation while incarcerated abundantly clear, and that she had been assured by both DCFS and the court that visitation would occur. (In re Precious J., supra, 42 Cal.App.4th at pp. 1477-1478, 50 Cal.Rptr.2d 385.) Furthermore, DCFS, not the mother, "had the obligation to make a record at the six-month and twelve-month review hearings establishing that reasonable services were provided," and DCFS even implicitly conceded that it did not facilitate visitation by refusing to acknowledge responsibility for providing such a service. (Id. at p. 1478, 50 Cal.Rptr.2d 385.) In other words, because mother's rights could not be terminated unless reunification services had been provided, and the record showed that, in fact, the most important component of such services, visitation, had not been provided, the trial court erred by terminating the mother's rights.
Here, DCFS did make the report listing the contacts between Urayna and her grandmother; mother's contention that the report was not adequate is just the kind of issue which should be developed by putting on one's own evidence or cross-examining the person who prepared the report. In other words, once DCFS puts on some evidence of the contacts, and their nature (including the fact that they were unremarkable, as signified by the lack of any statements that the minor was particularly attached to, or particularly fearful of, the relative), it is up to the parent to produce evidence that, in fact, the minor would benefit from continuing the relationship so much that termination of the parental rights is inappropriate. (See In re Lorenzo C, supra, 54 Cal.App.4th 1330, 63 Cal. Rptr.2d 562 [statutes requiring department of human services to prepare study about likelihood that minor will be adopted and to review amount and nature of any contact between minor and his relatives since time of placement does not require department to go beyond general description of postplacement contacts between relative and child and into detailed evaluation about whether continuance of relationship would be beneficial to child, and a report which did not address what real strength and quality of child's bonding with his relative was, and whether loss of that relationship would be substantial loss for child, was not deficient].)

*440 DISPOSITION
The order of January 5, 1999 which terminated Kimberly L.'s parental rights to Urayna L. is affirmed.
KLEIN, P.J., and ALDRICH, J., concur.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code except as otherwise noted.
[2] The following facts are taken from the reporter's and clerk's transcripts. Because the single issue on appeal is primarily one of law, not fact, we recite only the most basic of facts.