[No. A096306. First Dist., Div. Three. June 21, 2002.]

In re BRIAN P., a Person Coming Under the Juvenile Court Law.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
CRISTIAN L., Defendant and Appellant.

## COUNSEL

Janet H. Saalfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard E. Winnie, County Counsel, and Nedra A. Shawler, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**PARRILLI, J.**—Cristian L. appeals from an order terminating his parental rights and finding his son Brian P. likely to be adopted. Cristian contends the order is not supported by substantial evidence. We conclude a parent may challenge the sufficiency of evidence supporting a child's adoptability, despite the parent's failure to raise the argument below. Because substantial evidence does not support the juvenile court's finding of adoptability, we reverse.

### BACKGROUND

Brian was born in 1997. He was declared a dependent of the juvenile court on November 3, 1999. On March 2, 2001, the court terminated Brian's mother's reunification services and set a hearing under Welfare and Institutions Code section 366.26[1] for June 22, 2001. No services had been ordered for Cristian, because the Alameda County Social Services Agency (the Agency) had been unable to locate him and his paternity had not been established. A status review report prepared on January 10 noted: "The minor was first assessed for adoption[] on June 20, 2000 [and] at that time the minor was approved for adoptive services because of lack of parental compliance with the case plan. The minor was reassessed on 1-10-01 and found to be a proper subject for adoption."

On June 21, the Agency filed a memorandum stating that the section 366.26 hearing needed to be continued, because Cristian had come forward

---

[1]Further statutory references are to the Welfare and Institutions Code.

and contacted the child welfare worker. The worker reported that Cristian told her he was an undocumented alien, and Brian's mother, Janelle P., had "continually stated that she would contact immigration services to have him deported if he attempted to have contact with [Brian]." Cristian told the worker he had relatives who were legal residents, and he was interested in having them adopt Brian if possible. The worker stated that Cristian, who was not identified as the father on Brian's birth certificate, "needs the opportunity to establish paternity."

The hearing was continued until August 24, and counsel was appointed for Cristian. The report for the section 366.26 hearing was dated August 20, 2001. The child welfare worker who prepared the report had only recently been assigned to the case, on July 13. The worker recommended a permanent plan of long-term foster care "at the present time," while the Agency looked for an adoptive home. The report noted that Brian's foster mother was not interested in adopting him. A maternal cousin was considering adoption. A referral had been made to the Agency's adoption unit, and the Agency would be looking for an adoptive home. But the worker stated "[t]here is not clear and convincing evidence that it is likely the child will be adopted at this time."

The worker noted that Brian, now four and a half years old, "has made excellent progress over the past year. He is almost able to dress himself, and is now toilet trained. Brian has begun to speak and his gait has improved." The report described Brian as "cautious but friendly with adults, and it takes him some time to warm up and trust adults. He appears to enjoy the attention from his foster mother's large extended family. He especially enjoys playing with the 5 year old, and he has emerged even more from his protective shell. When playing he can be just as loud and rambunctious as any other child his age." Brian did not make a statement for the report, because "[a]lthough Brian is speaking more now, he has been unable to make a statement. Brian's smiles, and gestures to his foster mother give the appearance that [he] is receiving the nurturing that he needs."

As for the likelihood of adoption, the worker repeated verbatim the January 10 report of assessments performed on June 20 and January 10, and added: "The Agency is looking for an adoptive home, and the maternal cousin is still considering adoption. [¶] The likelihood of adoption is very good, but it is not [im]minent at this time." The worker also noted: "If paternity is established, the father's relatives may be considered for placement as well."

Two reports from a social worker associated with the foster family agency, dated March and May 2001, were appended to the section 366.26

hearing report. Both expressed concern over the negative effects of Brian's visitation with his mother Janelle, who frequently failed to appear for visits. The May report noted that when Brian was first placed in foster care at the age of two and a half, he was sickly and developmentally delayed. "He did not speak, walked with an unsteady gait and could not even attempt to dress himself." However, "almost [t]wo years after placement Brian has blossomed into a happy, healthy little boy, who loves learning in pre-school and playing with his peers." The March report stated: "Brian continues to improve developmentally. His gait is becoming less awkward and his speech improves daily." This report also noted: "He is eating and sleeping well, dresses himself, and has been successfully toilet trained."

At the hearing on August 24, Cristian appeared before the court. Janelle did not. County counsel explained to the court that the recommendation in the report for a permanent plan of long-term foster care was "incorrect." The reason for the confusion was Cristian's recent appearance in the proceedings. His paternity had been confirmed just prior to the hearing. Counsel asked the court for a continuance of the section 366.26 hearing so that Cristian's relatives could be assessed as potential adoptive parents.

The court responded that Brian had been deemed adoptable when the hearing was set, and unless there were some change in the Agency's position, "then I don't see a basis for a change in the recommendation." Counsel assured the court that the Agency "does agree that the minor is adoptable," but said the Agency wanted a continuance for the purpose of finding an adoptive home. Janelle's counsel noted that "if we terminate parental rights, we have the danger of creating a judicial orphan with no adoptive home in sight." The court, however, pointed out that a prospective adoptive home is not a prerequisite for terminating parental rights, and stated it was "prepared to hear this as a contested matter." Cristian's counsel advised the court that his client was living with his aunt, and wanted her to be considered as "a suitable placement." The court stated that placement issues were not before it at this hearing, and were not grounds for a continuance.

The child welfare worker who prepared the section 366.26 hearing report testified briefly. She said she had intended to recommend continued foster care when she wrote the report, but realized she had made an error after speaking to counsel, who informed her that "[w]e were recommending

termination of parental rights." The worker also retracted, with some confusion, her proposed finding on the lack of clear and convincing evidence of adoptability.[2]

Cristian also testified briefly. He said he first learned Brian was in foster care about six months before the section 366.26 hearing. Janelle would not tell him where Brian was, though. She only wanted money from Cristian. He had last seen Brian "a long time ago." He had asked for custody repeatedly, but Janelle always said no.

In closing, county counsel made no mention of Brian's adoptability, but asked the court to terminate parental rights because Cristian had made insufficient efforts to care for Brian, had no parental bond, and had not seen Brian for six months. Counsel pointed out that Janelle had also failed to bond with Brian, her visitation had been detrimental for the child, and she had failed to appear for the hearing.

Cristian's counsel complained that the case was "fraught with various errors." He protested that Cristian had not been properly notified of earlier hearings, and had never been provided with reunification services. Counsel also objected that he had only received the section 366.26 hearing report the day before the hearing.

Janelle's counsel again argued that the court should not "engage in creating judicial orphans." He urged the court to follow the report's recommendation of long-term foster care.

Brian's counsel said he gave "special credence" to the part of the report finding the likelihood of adoption "very good" if not imminent. He urged the court to establish adoption as the permanent plan.

The court found there was clear and convincing evidence that Brian was likely to be adopted. It terminated the parental rights of Cristian and Janelle, and prohibited any visitation. The court noted that the Agency was required to evaluate any relatives who were interested in being considered as adoptive parents.

---

[2]Janelle's counsel asked, "[D]id you mean to write that?" The worker responded "No. That—that is correct. The child—" Counsel attempted to terminate the questioning at this point, but the worker continued: "The child is likely to be adopted at this time. Currently, we do not have an adoptive home; but he is considered adopted—adoptable."

DISCUSSION

## 1. *The Waiver Issue*

Cristian contends no substantial evidence supported the finding that Brian was likely to be adopted. The Agency disputes this claim, but also asserts that Cristian waived it by failing to object to the adoptability finding below. Cristian concedes that defects in the adoption assessment required by section 366.21, subdivision (i) may be waived.[3] ■ However, he argues no objection is necessary to preserve a claim that there was a failure of proof. We agree.

A similar waiver argument was raised in *In re Lukas B.* (2000) 79 Cal.App.4th 1145 [94 Cal.Rptr.2d 693]. The court decided to consider the issue of adoptability "if only to demonstrate that trial counsel was not ineffective for failing to argue the issue," but observed there was authority that would support deeming the issue waived. (*Id.* at pp. 1153-1154, citing *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411-412 [15 Cal.Rptr.2d 613]; *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 [54 Cal.Rptr.2d 27]; and *In re Urayna L.* (1999) 75 Cal.App.4th 883, 886 [89 Cal.Rptr.2d 437].)

---

[3]Section 366.21, subdivision (i) provides:

"Whenever a court orders that a hearing pursuant to Section 366.26 shall be held, it shall direct the agency supervising the child and the licensed county adoption agency, or the State Department of Social Services when it is acting as an adoption agency in counties that are not served by a county adoption agency, to prepare an assessment that shall include:

"(1) Current search efforts for an absent parent or parents or legal guardians.

"(2) A review of the amount of and nature of any contact between the child and his or her parents or legal guardians and other members of his or her extended family since the time of placement. Although the extended family of each child shall be reviewed on a case-by-case basis, 'extended family' for the purpose of this paragraph shall include, but not be limited to, the child's siblings, grandparents, aunts, and uncles.

"(3) An evaluation of the child's medical, developmental, scholastic, mental, and emotional status.

"(4) A preliminary assessment of the eligibility and commitment of any identified prospective adoptive parent or legal guardian, particularly the caretaker, to include a social history including screening for criminal records and prior referrals for child abuse or neglect, the capability to meet the child's needs, and the understanding of the legal and financial rights and responsibilities of adoption and guardianship. If a proposed guardian is a relative of the minor, and the relative was assessed for foster care placement of the minor prior to January 1, 1998, the assessment shall also consider, but need not be limited to, all of the factors specified in subdivision (a) of Section 361.3.

"(5) The relationship of the child to any identified prospective adoptive parent or legal guardian, the duration and character of the relationship, the motivation for seeking adoption or guardianship, and a statement from the child concerning placement and the adoption or guardianship, unless the child's age or physical, emotional, or other condition precludes his or her meaningful response, and if so, a description of the condition.

"(6) An analysis of the likelihood that the child will be adopted if parental rights are terminated."

Of the cases cited by the *Lukas B.* court, only *Crystal J.* actually supports the proposition that the ultimate issue of whether the child is likely to be adopted can be waived by failing to argue the point at the section 366.26 hearing. Both the *Aaron B.* and *Urayna L.* courts made it clear that it was objections to the adequacy of the adoption assessment report that were waived. In *Urayna L.*, the appellant did not contest the sufficiency of the evidence. (*In re Urayna L., supra*, 75 Cal.App.4th at p. 885.) The *Aaron B.* court evidently addressed the sufficiency of the evidence in an unpublished part of the opinion. (*In re Aaron B., supra*, 46 Cal.App.4th at pp. 844, 846.) The *Crystal J.* court, however, went further and stated that not only were objections to the sufficiency of the assessment reports waived, but "substantive insuffien[cy] to establish requisite findings . . . too, was waived by the failure to raise it at the trial level." (*In re Crystal J., supra*, 12 Cal.App.4th at pp. 411-412.)

We believe the *Crystal J.* court overstated the scope of the waiver doctrine. The court itself subsequently recognized that "[d]eficiencies in an assessment report surely go to the weight of the evidence, and if sufficiently egregious may impair the basis of a court's decision to terminate parental rights." (*In re Crystal J., supra*, 12 Cal.App.4th at p. 413.) The court then decided that in the case before it, the totality of the evidence (including the reports) was sufficient to support the juvenile court's findings and judgment. (*Ibid.*)

When the merits are contested, a parent is not required to object to the social service agency's failure to carry its burden of proof on the question of adoptability. (See *In re Chantal S.* (1996) 13 Cal.4th 196, 210 [51 Cal.Rptr.2d 866, 913 P.2d 1075] [agency has burden of presenting evidence to support allegations and requested orders]; *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 254 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) "Generally, points not urged in the trial court cannot be raised on appeal. [Citation.] The contention that a judgment is not supported by substantial evidence, however, is an obvious exception to the rule." (*Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, fn. 17 [92 Cal.Rptr. 704, 480 P.2d 320]; see also *In re Joy M.* (2002) 99 Cal.App.4th 11 [120 Cal.Rptr.2d 714]; *Robison v. Leigh* (1957) 153 Cal.App.2d 730, 733 [315 P.2d 42].) Thus, while a parent may waive the objection that an adoption assessment does not comply with the requirements provided in section 366.21, subdivision (i), a claim that there was insufficient evidence of the child's adoptability at a contested hearing is not waived by failure to argue the issue in the juvenile court.

2. *The Merits*

 We review the juvenile court's order to determine whether the record contains substantial evidence from which a reasonable trier of fact

could find clear and convincing evidence that Brian was likely to be adopted, which was the basis for the court's termination of Cristian's parental rights. (*In re Lukas B., supra*, 79 Cal.App.4th at p. 1154; § 366.26, subd. (c)(1).) ■ "Clear and convincing" evidence requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt. (*In re Jerome D.* (2000) 84 Cal.App.4th 1200, 1205 [101 Cal.Rptr.2d 449].)

■ The issue of adoptability requires the court to focus on the child, and whether the child's age, physical condition, and emotional state make it difficult to find a person willing to adopt. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649 [28 Cal.Rptr.2d 82]; *In re Jeremy S.* (2001) 89 Cal.App.4th 514, 523 [107 Cal.Rptr.2d 280].) It is not necessary that the child already be placed in a preadoptive home, or that a proposed adoptive parent be waiting. (§ 366.26, subd. (c)(1); *In re Sarah M., supra*, at p. 1649.) However, there must be convincing evidence of the likelihood that adoption will take place within a reasonable time. (*In re Amelia S.* (1991) 229 Cal.App.3d 1060, 1065 [280 Cal.Rptr. 503].)

■ Such evidence was sorely lacking in this case. The juvenile court did not have the benefit of an adoption assessment report, which would have presented the kind of facts needed to support a finding of adoptability.[4] The Agency relies on the references in the record to adoption assessments conducted on June 20, 2000, and January 10, 2001. However, these references are devoid of any facts about Brian. The June 20 "assessment" merely concluded that Brian was "approved for adoptive services because of lack of parental compliance with the case plan." This says nothing about his adoptability. The January 10 "assessment" concluded only that Brian was "found to be a proper subject for adoption." The *likelihood* of an adoption was not mentioned. Nor did the child welfare worker supply more facts in her testimony at the hearing. She merely reiterated the Agency's position that Brian was adoptable. While the section 366.26 report did include a bare statement that the chances of adoption were "very good," this hardly amounts to clear and convincing evidence. A social worker's opinion, by itself, is not sufficient to support a finding of adoptability. (*In re Kristin W.* (1990) 222 Cal.App.3d 234, 253 [271 Cal.Rptr. 629].)

The facts about Brian's age, physical condition, and emotional state that can be gleaned from this record raise as many questions as assurances about

---

[4]The court is required to order an adoption assessment when it sets a section 366.26 hearing. (§§ 366.21, subd. (i) & 366.22, subd. (b).) The record before us, though it does not include a reporter's transcript of the hearing at which the section 366.26 hearing was set, indicates the court failed to comply with this requirement.

his adoptability. While he had "blossomed" into a healthy four-and-a-half-year-old boy after his early developmental difficulties, he had only recently learned to dress himself. His speech and gait were still in the process of improving. He was unable to make a statement to his child welfare worker, who relied on facial expressions and gestures to infer that he was happy in his foster placement. This fragmentary and ambiguous evidence was not enough to buttress the Agency's position that Brian was adoptable. The court erred by finding clear and convincing evidence of adoptability.

Because we agree with Cristian's primary claim on appeal, we need not resolve his other contentions, one of which is that the court abused its discretion by denying a continuance.[5] We note, however, that the evidentiary problems in this case could have been avoided had the court granted the continuance requested by the Agency.

## DISPOSITION

The juvenile court's order is reversed.

Corrigan, Acting P. J., and Pollak, J., concurred.

A petition for a rehearing was denied July 16, 2002, and the opinion was modified to read as printed above.

---

[5]In a petition for rehearing, Cristian asks us to address his claim that the March 2, 2001, order setting the section 366.26 hearing was defective because the court failed to find that he had been provided with reasonable reunification services. Cristian contends he had no notice of the setting order, and therefore should be allowed to challenge it on this appeal. However, the court made no finding on services for Cristian on March 2, 2001, because on June 28, 2000, it had ordered that services need not be provided until his paternity was established. The time for challenging that finding has long since passed.

Cristian protests that he had no notice of any proceedings before the section 366.26 hearing because the Agency made insufficient efforts to find him. On this record, we are not prepared to say that the Agency failed to make a reasonable effort to locate Cristian, a homeless undocumented alien who did not seek to participate in the proceedings until the last minute. If Cristian desires to pursue a claim for reunification services, he may do so by filing a section 388 petition in juvenile court.