[No. G034454. Fourth Dist., Div. Three. Feb. 23, 2005.]

In re GREGORY A., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
NAKIA A., Defendant and Appellant.

**COUNSEL**

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Benjamin P. de Mayo, County Counsel, and Ward Brady, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

## Opinion

### FYBEL, J.—

#### Introduction

Nakia A. challenges the juvenile court's order terminating her parental rights to Gregory A., now nine years old. Nakia argues there was not substantial evidence supporting the juvenile court's finding that Gregory would be adopted within a reasonable time.

Because adoptability is an issue on which the social services agency bears the burden of proof, we hold Nakia may challenge the sufficiency of the evidence supporting the juvenile court's finding of Gregory's adoptability for the first time on appeal. Three Court of Appeal decisions concluded the failure to object to admissibility of social service agency reports recommending adoption waives the right to challenge the sufficiency of the evidence of adoptability on appeal; two other more recent decisions concluded no such waiver occurs. The California Supreme Court has since cited one of the latter two cases with approval. We publish this opinion because we conclude these two later cases are soundly decided and we follow them.

As to the merits of Nakia's appeal, we conclude there was sufficient evidence showing it was likely Gregory would be adopted within a reasonable time. Therefore, we affirm.

#### Statement of Facts and Proceedings in the Trial Court

Because of the narrow issue on appeal, we recite only those facts relevant to the finding of adoptability.

Gregory, then seven years old, was taken into protective custody on February 3, 2003. His mother, Nakia, had been hospitalized because she was a danger to herself and others as a result of a mental disorder. (Welf. & Inst. Code, § 5150.) (All further statutory references are to the Welfare and Institutions Code.)

In a petition filed February 6, 2003, the Orange County Social Services Agency (SSA) alleged Gregory should be adjudicated a dependent of the juvenile court under section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), (c) (serious emotional damage), and (g) (no provision for support). Gregory was placed in the care of his maternal grandmother and maternal aunt.

At a joint jurisdiction and disposition hearing, the court found true by a preponderance of the evidence the allegations under section 300, subdivisions (a), (b) and (c). The section 300, subdivision (g) allegations were dismissed. The court ordered Gregory declared a dependent child of the juvenile court, and vested custody in SSA. The court also found by clear and convincing evidence that placement with Nakia would pose a substantial danger to Gregory's physical or emotional well-being. Gregory remained placed with his maternal grandmother and maternal aunt.

In a status review report dated August 20, 2003, SSA reported Gregory was medically well, and "appears to be developing on target." SSA also noted, "He has many interests, including Superheroes and Pokemon. He is also very active and energetic and seems to thrive on playful interaction. Gregory has good gross motor skills, frequently creates games to play using his surrounding environment, and exhibits good hand-eye coordination through his ability to play catch and numerous types of video games." In school, Gregory was performing at grade level, but did not excel in any particular area. He showed no signs of mental or emotional problems. "Overall, the child is personable, friendly and easy to talk to, maintaining good eye contact." SSA also reported that a permanent plan assessment determined Gregory would be difficult to place for adoption because of his age, but that he would probably be adopted.

In November 2003, Gregory was diagnosed with attention deficit hyperactivity disorder (ADHD). He attended therapy sessions to address and correct the ADHD problems, and his school psychologist recommended he be given psychotropic medication to address his attention problems.

At the 12-month review hearing, the court terminated Nakia's reunification services, and set a permanency hearing. (§ 366.26.)

In a report dated July 21, 2004, prepared in advance of the permanency hearing, SSA reported: "On December 23, 2003, a Permanent Placement Assessment was completed by the undersigned . . . . It was determined that the child will likely be adopted because he displays no significant behavioral, medical or developmental difficulties which would disrupt placement. Additionally, the child is already placed in a home which is committed to providing him with permanency. Gregory is noted to suffer from symptoms of [ADHD], but its impact on the child is isolated to school. Gregory is also not part of a sibling set." The permanency hearing report also noted, "[Gregory] is a healthy, happy, energetic child with exceptional social skills. In general, the child is engaging and fun, often smiling and laughing. It is probable that Gregory will be adopted because he experiences no significant behavioral, developmental, or medical problems. The child is noted to suffer from

symptoms of ADHD, in particular distractibility and hyperactivity. This impacts his school behavior as he has difficulty staying on task and completing in-class assignments. Fortunately, these symptoms only impact his academic progress and are not disruptive to the stability of his placement."

Nakia's visits with Gregory through the dependency period were sporadic, and her interaction with him was limited. Gregory did not exhibit any desire to reunify with Nakia, and did not seek any emotional support from her during their visits. The permanency hearing report concluded SSA "d[id] not believe that the child has a strong positive significant relationship with his mother, that would outweigh the benefits of a permanent, stable home."

Gregory's maternal grandmother and maternal aunt were committed to adopting him. However, they had not completed the necessary steps to begin the adoption process, and SSA expressed some reservations about their ability to deal with Gregory's ADHD.

SSA recommended Nakia's parental rights be terminated and asked the juvenile court to find "there is clear and convincing evidence that it is likely the child will be adopted."

At the permanency hearing on July 21, 2004, the juvenile court admitted SSA's permanency hearing report. The court found it was likely Gregory would be adopted, the exceptions to termination of parental rights under section 366.26, subdivision (c)(1) did not apply, and termination of parental rights was in Gregory's best interests. The court therefore terminated Nakia's parental rights and ordered a permanent plan of adoption. Nakia timely appealed. (The court also terminated the parental rights of Gregory's father; the father is not a party to this appeal.)

DISCUSSION

I.

NAKIA DID NOT WAIVE HER RIGHT TO CHALLENGE THE JUVENILE<br>COURT'S FINDING OF ADOPTABILITY.

SSA argues "the issue of adoptability was waived because [Nakia] never raised it at the trial level." Three cases support this contention. In *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411–412 [15 Cal.Rptr.2d 613], the appellate court concluded the mother had waived her right to challenge the assessment reports' recommendations regarding adoptability *and* the insufficiency of the juvenile court's finding of adoptability, by failing to object to the assessment reports at trial. To reach this conclusion, the court principally

relied on the general proposition that an appellate court will ordinarily not consider erroneous rulings where an objection could have been, but was not, presented to the trial court. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 311, p. 321; see also 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 394, p. 444; *id.* (2004 supp.) § 394, pp. 112–113.) In *In re Crystal J., supra,* 12 Cal.App.4th at page 412, footnote 2, the court also noted that trial counsel "as much as conceded the substance of the case."

In *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 [54 Cal.Rptr.2d 27], the appellate court, relying on *In re Crystal J., supra,* 12 Cal.App.4th at pages 411–412, concluded the father had waived his right to challenge the adequacy of the adoption assessment or the finding of adoptability because he failed to object to the assessment report and provide the trial court with evidence supporting his position. The court also cited other repeated failures by the father, including the failure to appear in court. (*In re Aaron B., supra,* at p. 846.)

In *In re Urayna L.* (1999) 75 Cal.App.4th 883, 886 [89 Cal.Rptr.2d 437], the mother argued she had not waived the right to challenge adoptability because the social services agency had the burden of proving adoptability but had failed to provide a complete assessment of adoptability. The appellate court concluded the mother waived the right to challenge the trial court's termination of her parental rights based on an inadequate assessment report because she never argued the inadequacy of the report to the trial court or introduced evidence in that regard. (*Id.* at p. 887.)

██ But in *In re Brian P.* (2002) 99 Cal.App.4th 616, 623 [121 Cal.Rptr.2d 326], the court reached a contrary conclusion: "[W]hile a parent may waive the objection that an adoption assessment does not comply with the requirements provided in section 366.21, subdivision (i), a claim that there was insufficient evidence of the child's adoptability at a contested hearing is not waived by failure to argue the issue in the juvenile court." The court reasoned that because the social services agency has the burden of proof of adoptability, the parent is not required to object to the lack of substantial evidence in order to preserve the issue for appeal. (*Ibid.*) " 'Generally, points not urged in the trial court cannot be raised on appeal. [Citation.] The contention that a judgment is not supported by substantial evidence, however, is an obvious exception to the rule.' [Citations.]" (*Ibid.*) The court in *In re Erik P.* (2002) 104 Cal.App.4th 395, 399 [127 Cal.Rptr.2d 922], used the same analysis to conclude the father had not waived the right

to argue lack of substantial evidence of adoptability, despite his failure to object to the juvenile court's finding. "Under the circumstances here, although the father did not object to the adoptability finding at the section 366.26 hearing, he may still argue that the juvenile court's adoptability finding was not supported by substantial evidence. Because it was the [Department of Family and Children's Services]'s burden to prove adoptability by clear and convincing evidence, to hold otherwise would dilute the Department's obligation to provide the juvenile court with the necessary facts regarding adoptability." (*Id.* at pp. 399–400.)

In *People v. Butler* (2003) 31 Cal.4th 1119 [6 Cal.Rptr.3d 730, 79 P.3d 1036], the California Supreme Court resolved a claim of the right to challenge an involuntary HIV testing order. In doing so, the court cited *In re Brian P., supra,* 99 Cal.App.4th at page 623, for the principle that a "challenge to [the] sufficiency of the evidence to support [a] finding of adoptability" may be made on appeal although no objection was made in the trial court. (*People v. Butler, supra,* 31 Cal.4th at p. 1126 & fn. 4.)

We agree with and apply the analysis of *In re Erik P., supra,* 104 Cal.App.4th 395, and *In re Brian P., supra,* 99 Cal.App.4th 616, and note *In re Brian P.* was cited with approval by the California Supreme Court. In this case, SSA had the burden to prove Gregory was adoptable. (See *In re Erik P., supra,* 104 Cal.App.4th at p. 400.) The only evidence supporting the adoptability finding was SSA's permanency hearing report, which was admitted without objection regarding Gregory's adoptability. We therefore conclude Nakia did not waive her right to argue on appeal the sufficiency of the evidence supporting the juvenile court's finding of Gregory's adoptability.

II.

SUBSTANTIAL EVIDENCE SUPPORTED THE JUVENILE COURT'S FINDING OF ADOPTABILITY.

"The juvenile court may terminate parental rights only if it determines by clear and convincing evidence that it is likely the child will be adopted within a reasonable time. [Citations.] In making this determination, the juvenile court must focus on the child, and whether the child's age, physical condition, and emotional state may make it difficult to find an adoptive family. [Citations.] In reviewing the juvenile court's order, we determine

whether the record contains substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that [the child] was likely to be adopted within a reasonable time. [Citations.]" (*In re Erik P., supra,* 104 Cal.App.4th at p. 400; see also *In re Zeth S.* (2003) 31 Cal.4th 396, 406 [2 Cal.Rptr.3d 683, 73 P.3d 541].) We give the court's finding of adoptability the benefit of every reasonable inference and resolve any evidentiary conflicts in favor of affirming. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 [32 Cal.Rptr.2d 535].)

■ A child's young age, good physical and emotional health, intellectual growth and ability to develop interpersonal relationships are all attributes indicating adoptability. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1651 [28 Cal.Rptr.2d 82].) " 'Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family.*' " (*In re Asia L.* (2003) 107 Cal.App.4th 498, 510 [132 Cal.Rptr.2d 733].) In this case, there was clear and convincing evidence that Gregory met all of these criteria.

Nakia relies on *In re Jerome D.* (2000) 84 Cal.App.4th 1200, 1204–1206 [101 Cal.Rptr.2d 449], in which the Court of Appeal concluded there was not sufficient evidence of adoptability to support the juvenile court's order terminating parental rights. The assessment report, on which the court relied, stated Jerome was adoptable " 'based on his good mental health, physical health, and sociability,' " and " '[h]e appears to be doing well in school, and currently requires no special treatment.' " (*Id.* at pp. 1204–1205.) The assessment report was, at best, incomplete; nothing more about Jerome's physical or emotional state was mentioned, and it failed to consider his prosthetic eye, "which apparently required care and treatment." (*Id.* at p. 1205, fn. omitted.) The assessment report also failed to consider "Jerome's close relationship with Mother." (*Ibid.*) And while the assessment report relied heavily on the mother's former boyfriend's desire to adopt Jerome, a home study had not been initiated, and the assessment report did not address the former boyfriend's criminal history involving domestic violence or the fact he was listed with child protective services as a perpetrator for emotionally abusing his niece and nephews. (*Id.* at pp. 1203, 1205.)

Nakia also relies on *In re Amelia S.* (1991) 229 Cal.App.3d 1060, 1061 [280 Cal.Rptr. 503], in which this court reversed an order terminating parental rights because there was insufficient evidence of adoptability. In that case, the juvenile court terminated parental rights to nine of the father's 10 children. (*Id.* at p. 1063.) All of the children had "various developmental, emotional and physical problems, some of a serious nature." (*Ibid.*) They had been split up and placed in five different foster homes; two sets of foster parents were "*considering*" adoption, two other sets did not wish to adopt the children placed with them, and one set of foster parents "had no intention of adopting" the child placed in their home. (*Id.* at pp. 1062–1063.)

The facts of the present case do not come close to those of *In re Jerome D.* and *In re Amelia S.* Gregory's good physical and emotional health throughout the dependency period has been well documented by SSA. Gregory's ADHD was being addressed through therapy and the possible administration of medication, and had no effect on his personal relationships or his behavior outside school. Gregory does not have a close relationship with Nakia. While Gregory's current caregivers had not completed the necessary steps to clear them to adopt Gregory, they had started the process, and had throughout the dependency period expressed a desire and commitment to adopt Gregory. Further, at the time Gregory was detained, SSA determined "[t]he home was acceptable as a placement for this child," showing there is a likelihood the adoption will be completed.

■ Gregory was placed with caregivers who are related to him and have continually expressed their desire to adopt him. Even when a child is not placed with prospective adoptive parents at the time of the permanency hearing, the focus remains on the child's physical and emotional state. "The fact that the child is not yet placed in a preadoptive home nor with a relative or foster family who is prepared to adopt the child, shall not constitute a basis for the court to conclude that it is not likely the child will be adopted." (§ 366.26, subd. (c)(1).) " '[I]t is not necessary . . . that the child, at the time of the termination hearing, already be in a potential adoptive home. Rather, what *is* required is clear and convincing evidence of the *likelihood* that adoption will be realized within a reasonable time.' [Citation.]" (*In re Jennilee T.* (1992) 3 Cal.App.4th 212, 223 [4 Cal.Rptr.2d 101], fn. omitted.) ■ There was clear and convincing evidence Gregory would be adopted within a reasonable time, despite the fact his maternal grandmother and maternal aunt had not completed the necessary prerequisites to adoption as of the time of the permanency hearing.

There was substantial evidence of Gregory's adoptability to support the juvenile court's finding, and we therefore affirm the order terminating Nakia's parental rights.

## Disposition

The order is affirmed.

Rylaarsdam, Acting P. J., and Bedsworth, J., concurred.