Filed 6/18/14  In re J.L. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re J.L., a Person Coming Under the Juvenile Court Law. | B252557 (Los Angeles County Super. Ct. No. CK78026) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>I.L.,<br><br>        Defendant and Appellant. | |

        APPEAL from an order of the Superior Court of Los Angeles County, Marilyn Kading Martinez, Juvenile Court Referee.  Affirmed.

        Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

        John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

We affirm the order terminating mother's parental rights over her daughter J.L.

## FACTS AND PROCEDURE

I.L. (mother) has four children, all of whom are in the dependency system. This appeal concerns only mother's third child—J.L. In a petition filed December 8, 2010, the Los Angeles County Department of Children and Family Services (DCFS) alleged mother and her male companion had a history of engaging in violent altercations in front of then seven-month-old J.L. The petition was sustained, and mother received 18 months of reunification services. J.L. eventually was returned to mother's care.

However, J.L. was subsequently detained in April 2013 after her younger sister was hospitalized for dehydration. On April 15, 2013, DCFS filed a supplemental petition alleging that mother's medical neglect of J.L.'s younger sister placed J.L. at risk of harm.

Mother did not appear at the jurisdictional hearing, and the petition was sustained. Mother was not given reunification services. Mother told a social worker that she would like J.L. and her younger sister placed in DCFS's custody for their safety because she did not have a place to live.[1]

On June 4, 2013, the court ordered J.L. to be placed in the same home as her older brother C.P. because J.L. had an existing relationship with C.P. C.P. was living with his paternal grandmother (grandmother) in a pre-adoptive home.[2] Grandmother wavered on whether she wanted to take care of J.L., initially stating that she did not and later stating that she did but only after she moved residences. At grandmother's request, J.L. was not immediately placed in her home and instead remained in her

---

[1]	Mother was reported to have smoked crack cocaine while breastfeeding J.L.'s younger sister. Mother did not submit to a requested drug test.

[2]	C.P.'s father requested biological testing to determine if he was also J.L.'s father. Test results are not included in our record, but father was not J.L.'s presumed father.

foster home, where she thrived. J.L. and C.P. visited each other weekly and enjoyed playing together.

Following the foster father's Welfare and Institutions Code section 388 petition, the court ordered J.L. and her younger sister to remain in the care of the foster father, reversing the order that J.L be placed with grandmother.[3] In the petition, the foster father explained that J.L. was enrolled in school and made progress academically, socially, and emotionally. When J.L. arrived at his home, she was operating at an 18-month level despite her chronological age of 35 months. But during her stay with her foster father she progressed to performing tasks at age level. J.L. and her younger sister were bonded to each other and to their foster father. Foster father indicated he cared for J.L. and her younger sister for over five months and that he had an approved adoption home study and was "ready and willing and able to love and parent these two little girls and would like to adopt them if possible." Foster father also indicated a willingness to "nurture a relationship with their brother [C.P.] . . . ." J.L.'s teacher emphasized J.L.'s strong bond with her foster father.

On September 24, 2013, the juvenile court ordered mother's parental rights be terminated. J.L. and her younger sister remained in the care of their foster father. The court referred the matter to the Alliance for Children's Rights or Public Counsel to assist in finalizing the adoption of J.L. and her younger sister by their foster father.

Mother did not appear at the section 366.26 hearing and did not provide her counsel with any direction. Mother did not challenge J.L.'s placement or argue that J.L. should be placed with grandmother.

## DISCUSSION

Mother's sole challenge on appeal is that "[b]ecause the juvenile court did not have a complete adoption assessment which gave an accounting of the nature and quality of the minor['s] [J.L's] relationship with a half-sibling, [C.P.] with whom they

---

[3]     Undesignated statutory citations are to the Welfare and Institutions Code.

3

regularly visited, it had insufficient evidence upon which to determine whether the benefit of that relationship was a legal bar to termination of parental rights."**4** (Boldface and capitalization omitted.) Mother recognizes that she did not raise this

---

**4** Section 366.22, subdivision (c)(1) provides in pertinent part:

"Whenever a court orders that a hearing pursuant to Section 366.26, including when a tribal customary adoption is recommended, shall be held, it shall direct the agency supervising the child and the county adoption agency, or the State Department of Social Services when it is acting as an adoption agency, to prepare an assessment that shall include:

"(A) Current search efforts for an absent parent or parents.

"(B) A review of the amount of and nature of any contact between the child and his or her parents and other members of his or her extended family since the time of placement. Although the extended family of each child shall be reviewed on a case-by-case basis, 'extended family' for the purposes of this subparagraph shall include, but not be limited to, the child's siblings, grandparents, aunts, and uncles.

"(C) An evaluation of the child's medical, developmental, scholastic, mental, and emotional status.

"(D) A preliminary assessment of the eligibility and commitment of any identified prospective adoptive parent or legal guardian, particularly the caretaker, to include a social history including screening for criminal records and prior referrals for child abuse or neglect, the capability to meet the child's needs, and the understanding of the legal and financial rights and responsibilities of adoption and guardianship. If a proposed legal guardian is a relative of the minor, the assessment shall also consider, but need not be limited to, all of the factors specified in subdivision (a) of Section 361.3 and Section 361.4.

"(E) The relationship of the child to any identified prospective adoptive parent or legal guardian, the duration and character of the relationship, the degree of attachment of the child to the prospective relative guardian or adoptive parent, the relative's or adoptive parent's strong commitment to caring permanently for the child, the motivation for seeking adoption or legal guardianship, a statement from the child concerning placement and the adoption or legal guardianship, and whether the child, if over 12 years of age, has been consulted about the proposed relative guardianship arrangements, unless the child's age or physical, emotional, or other condition precludes his or her meaningful response, and if so, a description of the condition.

"(F) An analysis of the likelihood that the child will be adopted if parental rights are terminated."

4

issue in the juvenile court but argues it was not forfeited because a parent may claim there was insufficient evidence of adoptability on appeal even without raising the adoptability issue in the juvenile court. Mother emphasizes that "[w]hen the merits are contested, a parent is not required to object to the social service agency's failure to carry its burden of proof on the question of adoptability." (*In re Brian P.* (2002) 99 Cal.App.4th 616, 623.)

Mother did not raise her challenge to the adequacy of the adoption assessment in the juvenile court and therefore forfeited it. (*In re Urayna L.* (1999) 75 Cal.App.4th 883, 886.) Mother's argument that the adoption assessment was not complete cannot reasonably be construed as a challenge to the sufficiency of the evidence that J.L. was likely to be adopted. Moreover, mother could have called witnesses at the hearing to attest to the relationship between J.L. and C.P. but she chose not to appear, not to give her attorney any direction, and not to call any witnesses. (See *ibid*.) Allowing a party to wait until appeal to challenge the adequacy of an adoption assessment "would permit a party to trifle with the courts by standing silently by, thus permitting the proceedings to reach a conclusion in with the party could acquiesce if favorable and avoid if unfavorable." (*Ibid*.)

If we were to construe mother's argument as a challenge to the sufficiency of the evidence, her argument borders on the frivolous. "The issue of adoptability posed in a section 366.26 hearing focuses on the *minor*, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor." (*In re Sarah M*. (1994) 22 Cal.App.4th 1642, 1649.) Overwhelming evidence supported the conclusion that J.L. was likely to be adopted. J.L. lived with her younger sister in a foster home with a father eager to adopt both of them. At the time of the section 366.26 hearing the court ordered assistance with the finalization of the adoption. That was the only remaining step. Even though J.L. had special needs, she made enormous progress under the care of her foster father, who not only wished

5

to adopt J.L. but also her younger sister.  The only reasonable conclusion was that J.L. was adoptable.

## DISPOSITION

The order terminating mother's parental rights is affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

6