Filed 4/12/16  In re J.C. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>J.C. et al.,<br><br>    Defendants and Appellants. | E064563<br><br>(Super.Ct.No. J257696)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Neil R. Trop, under appointment by the Court of Appeal, for Defendants and Appellants.

Jean-Rene Basle, County Counsel, and Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

1

I

INTRODUCTION

Father, Danny A., appeals from a judgment terminating parental rights under Welfare and Institutions Code section 366.26.[1]  (§ 395.1.)  The subject of the appeal is father's fifth child, J.C., born in November 2014.  Father and mother, who is not a party to this appeal, have four older children for whom parental rights were terminated in Nevada in 2012 and 2013 due to physical abuse by mother.[2]

On appeal, father argues the adoption assessment report prepared by CFS[3] did not adequately address the child's medical and developmental status and therefore the court's finding of adoptability was not supported by substantial evidence.  We reject father's appeal and affirm the judgment.

II

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Detention*

On December 2, 2014, CFS filed a dependency petition alleging that J.C., a newborn, was a child described by section 300, subdivision (b), because mother suffered from a severe mental illness and had a problem with substance abuse, rendering her

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]  Mother's oldest child, her sixth child, is being raised by his father in Los Angeles.

[3]  San Bernardino County Children and Family Services.

unable to provide adequate care for J.C. Father was later identified as Danny A.

In the detention report, CFS stated it had received a referral that mother was mentally ill and had threatened to harm J.C. Mother had been diagnosed with schizoaffective disorder and was not taking her medications. Mother's sister, L.C., claimed mother had been abusing drugs for 10 years and had five other children not in her custody. J.C. was detained with L.C., the maternal aunt.

B. *Jurisdiction and Disposition*

In the jurisdiction and disposition report, L.C. disclosed there had been domestic violence between mother and father. L.C. said the parents had made a suicide pact and father had convinced mother to drink bleach, as well as beating her.

Father reported to CFS that he lived in Las Vegas with his mother, the paternal grandmother, who had custody of the parents' four other children, ages 12, 11, five, and four years. The older children had been removed from parental custody by a Nevada dependency court due to physical abuse by mother. Father said he was married to mother but she left him when she was two months pregnant and told him that she had an abortion. Father admitted there was an incident in which he had pushed mother but he denied engaging in any substance abuse.

A Nevada social worker described the main problems with the family as being mother's mental health, domestic violence between the parents, and father's failure to protect the children from mother. Father was arrested in 2010 for domestic battery when he shoved mother in the bathroom. In 2011, there was a substantiated referral for physical abuse, when the youngest child of the four older children was removed.

3

On January 2, 2015, CFS filed a first amended petition pursuant to section 300, subdivision (b), adding allegations that mother had an unstable lifestyle, that the parents had a history of domestic violence, and that mother suffered substance abuse issues, all of which placed J.C. at risk for abuse or neglect. The petition also alleged, pursuant to section 300, subdivision (g), that father's capacity and willingness to care for J.C. was unknown. Lastly, the petition alleged, pursuant to section 300, subdivision (j), that the four older siblings had been removed from parents due to abuse and that the parents' rights had been terminated.

At a hearing on January 5, 2015, father was present in court and was represented by appointed counsel. Mother was not present but a temporary guardian ad litem was appointed to investigate whether mother was in need of a guardian. The court granted father supervised visitation for one hour each week.

In an addendum report, CFS recommended that neither parent receive reunification services and that adoption be the permanent plan for J.C. The minute orders from the Nevada court indicated that the parental rights had been terminated for three of the older children in 2012 and the parents had relinquished their parental rights for the fourth child in 2013. The four older siblings were adopted by the paternal grandmother. Mother stated she could not care for a baby because she was unstable and homeless. She preferred her sister, L.C., have custody of J.C.

On March 12, 2015, the juvenile court was informed that mother had been appointed a conservator pursuant to the Lanterman-Petris-Short Act (§ 5000 et seq.). The parents had been visiting J.C. regularly. Although the paternal grandmother was willing

4

to adopt J.C., as well as the other four children, CFS recommended a relative placement with a maternal uncle because L.C. was expecting twins. In April 2015, mother was hospitalized for mental health issues.

On April 24, 2015 the court conducted a jurisdictional hearing and dismissed the allegation that J.C. was a child as described by section 300, subdivision (g), and the allegation under section 300, subdivision (b), that mother suffered substance abuse problems. The court made a true finding on the remaining allegations under section 300, subdivision (b), and the allegation under section 300, subdivision (j).

At the dispositional hearing, Stacy Duncan testified that she had been appointed as mother's permanent Lanterman-Petris-Short conservator on February 6, 2015, and that mother was residing in a board and care facility. However the administrators had requested mother be removed due to behavioral problems.

The juvenile court declared J.C. a dependent of the court and removed her from the custody of the parents. Pursuant to section 361.5, subdivision (b)(10), because of the parents' failure to reunify with the older siblings, the court denied the parents reunification services. The court ordered that a hearing be conducted to select and implement a permanent plan for J.C. (§ 366.26.) The court ordered twice monthly supervised visits for parents.

C. *Section 366.26 Hearing*

On July 9, 2015, J.C. was about seven months old and had been placed with the maternal uncle and his wife, who were committed to the plan of adoption. J.C. was happy and bonded with her uncle's family. Father had not visited with J.C. since the

5

dispositional hearing in April 2015. The section 366.26 report stated the child was current on her medical exams and immunizations and "[s]he is healthy with no medical concerns." Additionally, she was "developmentally on target for her age group . . . of normal height and weight . . . very alert, smiling, and interactive. She can sit up, pull herself up, and stand. She eats and sleeps very well."

In August 2015, CFS recommended adoption by the maternal uncle as J.C.'s permanent plan. At the section 366.26 hearing, the court found by clear and convincing evidence that it was likely that J.C. would be adopted. The court terminated the parental rights.

III

DISCUSSION

We review an order for termination of parental rights for an abuse of discretion and for substantial evidence to support the juvenile court's findings. (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610; *In re Tamneisha S.* (1997) 58 Cal.App.4th 798, 806.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence — that is, evidence which is reasonable, credible, and of solid value — such that a reasonable trier of fact could find that termination of parental rights is appropriate based on clear and convincing evidence. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924.)

The juvenile court may terminate parental rights based on clear and convincing evidence that it is likely a child will be adopted within a reasonable time. (§ 366.26, subd. (c)(1); *In re Jerome D.* (2000) 84 Cal.App.4th 1200, 1204.) For the first time on

6

appeal, father argues the juvenile court selected the permanent plan of adoption and terminated parental rights without an adequate evaluation of J.C.'s medical and developmental status.  (§ 366.21, subd. (i)(1)(C).)

The first obstacle to father's argument is he did not raise it below.  It is well-established that, in order to challenge the sufficiency of an adoption assessment on appeal, an objection must be raised in the juvenile court:  "As many courts have noted, any other rule would permit a party to trifle with the courts by standing silently by, thus permitting the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable.  (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338-1339.)"  (*In re Urayna L.* (1999) 75 Cal.App.4th 883, 886, citing *In re Aaron B.* (1996) 46 Cal.App.4th 843 and *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411.)  Because father did not previously object during the section 366.26 hearing to the adequacy of CFS assessment of J.C.'s medical and developmental status, he cannot raise the issue now on appeal.

Notwithstanding father's waiver, we nonetheless conclude substantial evidence supports the juvenile court's finding of adoptability.  The record belies father's claim about the insufficiency of the adoption assessment because the CFS report included the pertinent information about J.C.'s medical and developmental status.  CFS particularly stated that J.C. was healthy and responsive; "developmentally on target," sitting up, pulling up, and standing; and eating and sleeping well.  In other words, she was an ordinary healthy baby of less than a year old, demonstrating no medical or developmental

7

problems. Father offers no plausible reason to question J.C.'s status, medically or developmentally.

Father also argues that, given mother's purported history of drug use—as related by her sister—CFS should have had performed neurological or other medical testing to provide an accurate assessment of J.C.'s medical status. However, according to the record, both mother and J.C. tested negative for drug or alcohol exposure when J.C. was born. The juvenile court dismissed the allegation about mother's purported substance abuse as unsupported. Furthermore, J.C. was current on her medical examinations and immunizations. Therefore, no additional medical evaluation was necessary to assess J.C.

Father's proposition that the CFS adoption assessment was not sufficient to support the court's express finding of adoptability is not supported by the case law he cites. In *In re Kristin W.* (1990) 222 Cal.App.3d 234, 253, the juvenile court had failed to make an express finding of adoptability and the social worker's opinion was the only evidence in the record on adoptability. The social worker had not discussed adoption with the foster parents and the children were difficult to place because of their ages. The social worker's opinion, standing alone, was held not sufficient to support an implied finding of adoptability.

*Kristin W.* is different from this case in which the court made an express finding of adoptability based on J.C.'s best interests and the clear and convincing evidence she was likely to be adopted by her uncle: "'A child's young age, good physical and emotional health, intellectual growth and ability to develop interpersonal relationships are all attributes indicating adoptability.' (*In re Gregory A.* (2005) 126 Cal.App.4th 1554,

8

1562.)" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1526; *In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649.) Based on the CFS reports and all the evidence, J.C., a young child in good health and with a bond with her prospective adoptive parents was unquestionably adoptable. Nothing indicated any obstacle to J.C., a healthy, happy baby, being adopted by the maternal uncle, who was willing and able to undertake her adoption. We reject father's challenge to the sufficiency of the evidence supporting the juvenile court's finding of adoptability.

IV

DISPOSITION

We affirm the trial court's finding of clear and convincing evidence that J.C. is adoptable and the order terminating parental rights.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____
J.

We concur:

RAMIREZ _____
P. J.

MILLER _____
J.