Filed 6/4/24  In re Luis N. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re LUIS N., a Person Coming Under the Juvenile Court Law. | B326735 |
| | (Los Angeles County Super. Ct. No. 22LJJP00432A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>SAMMY N.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jennifer W. Baronoff, Judge Pro Tempore. Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica Buckelew, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

The father in this dependency case challenges the juvenile court's exertion of jurisdiction over his then-five-year-old son based on the father's inappropriate physical discipline. The father also challenges the portion of the court's case plan requiring him to participate in mental health services. While the father's challenge to the jurisdictional finding is both not justiciable and is moot, and his challenge to the dispositional order is both moot and forfeited, we nevertheless reach the merits of his challenges and conclude that they lack merit. Thus, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. The Family

Sammy N. (father) and Rosalie S. (mother) share one child together—Luis N., born March 2017. In a 2017 order issued upon the termination of jurisdiction in an earlier dependency case, the juvenile court had ordered father and mother to share joint legal custody of Luis, and granted mother sole physical custody of Luis, with father entitled to monitored visitation of four hours per week.[1]

---

1    Father has three other children; mother has seven other children who elected to live with their own father in Las Vegas, Nevada because they did not want to "be around" father.

2

## II. Father's Abusive Conduct Against Mother

Father has physically abused mother for years.

In 2017, father "punctured a tire" of mother's vehicle while mother—then nine months pregnant with Luis—was inside the vehicle. This is the incident that gave rise to the 2017 order placing Luis in mother's physical custody and limiting father to monitored visits; the juvenile court exerted dependency jurisdiction, and terminated its jurisdiction with the 2017 exit order requiring that father's visits be monitored due to his lack of "substantial progress" in the court-ordered domestic violence treatment program, parenting classes, and individual counseling.

In 2019, father "assaulted" mother by "forcefully push[ing]" her to the ground, causing her "face to strike the ground"; Luis and father's children were nearby. This incident also gave rise to another dependency proceeding.

In 2021, a criminal court issued a criminal protective order protecting mother from father for a period of ten years. Father regularly violated this order by showing up at her home, threatening her, and demanding to see Luis.

Father also emotionally abused mother.

He would drive by her home each day, look in the windows of her home, and send her text messages indicating he knew where she was at any given time. When mother expressed her desire to move with Luis to Las Vegas to be near her other children, father threatened that if she left, she would "be sorry." Knowing that one of mother's children committed suicide, father would "manipulate" mother by threatening to "hang himself" and warning that it would be her "fault."

Father has an extensive criminal history which spans thirty years (from 1991 to 2021) and which includes convictions

for inflicting corporal injury against a spouse and committing battery on a spouse.

## III.    The Incident Giving Rise to the Current Dependency Proceeding

In July 2022, father came to mother's home to replace a window he had jumped through and shattered the year before. Father wanted to visit with Luis after repairing the window, but mother refused because it was 10 o'clock at night, Luis was not feeling well, and Luis needed to go to bed.  Angered, father went to his car and shattered one of his car's windows with a brick. When mother began recording a video of this incident on her cell phone, father "chased" her and "punched" her hand to dislodge the phone.  Luis witnessed the entire incident.  He saw "blood splattered everywhere" on the car and screamed at father, "Don't hit my mom!"  Father fled when maternal grandmother called the police.  Mother's hand swelled and bruised.

## IV.    Father's Use of a Belt on Luis

In an interview with a social worker from the Los Angeles County Department of Children and Family Services (the Department) days after the July 2022 incident, Luis reported that father disciplines him by hitting him with a belt and proceeded to demonstrate *how*—by pantomiming pulling his arm back and swinging it forward, while saying, "'Like this.'"  Luis also shared that father's use of the belt leaves marks, although the social worker did not at the time of the interview personally observe any marks or bruises indicative of excessive discipline, abuse, or neglect.  Luis stated that mother disciplines him by spanking him on his bottom with an open hand.

4

## V. Father's Aggravated Interactions with the Department and Minimization of Responsibility

In his initial communications with the Department, father became "escalated," interrupted the social worker, and hung up during multiple calls. When the Department was finally able to communicate with father in September 2022, he blamed one of mother's children for breaking the window he had come to repair, claimed he simply "panicked" when he discovered that he had locked his keys in the car while it was running, and denied punching mother's hand or hearing Luis exclaim not to hit her. Father acknowledged there were previous incidents of domestic violence but believed they should not "be held against him" because he had "done his time."

## VI. The Petition

In October 2022, the Department filed a petition asking the juvenile court to exert dependency jurisdiction over Luis on the grounds that (1) father and mother "have a history of engaging in violent altercations" in Luis's presence, citing the July 2022 incident as well as the incidents giving rise to the prior 2017 and 2019 proceedings involving Luis's half-siblings, which places Luis "at risk of serious physical harm, damage, [or] danger" (thereby rendering jurisdiction appropriate under Welfare and Institutions Code section 300, subdivisions (a), (b)(1), and (j)[2]); and (2) father "physically abused" Luis "by striking [his] body with a belt causing marks to the child," which "was excessive and caused the child unreasonable pain and suffering" and places him "at risk of serious physical harm, damage, physical abuse and

---

[2]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

failure to protect" (thereby rendering jurisdiction appropriate under section 300, subdivision (b)(1)).

The Department re-interviewed the family in November 2022. Father asserted that the Department's allegation of physical abuse was a "false statement" and that his form of discipline was to have Luis stand in a corner for a few minutes and to then discuss the reason for the "timeout" with Luis and what he "learned." Father stated that mother "would not have let [him] hit [his] son with a belt or anything," but if he "was ever to hit [his] son," it would be with "an open hand on the butt." Mother told the Department that she was only aware of one instance when father spanked Luis. Luis changed his story, reporting that father disciplines him by sending him to the corner when he does not listen.

## VII.  Combined Jurisdictional and Dispositional Hearing

The juvenile court held a combined jurisdictional and dispositional hearing on January 19, 2023. The court exerted jurisdiction over Luis on each ground alleged in the Department's petition, but amended the allegation regarding father's use of a belt on Luis to eliminate the phrase "physically abused" and replace it with "inappropriately physically disciplined." The court explained that it sustained that allegation based on Luis's initial report to the Department that "he's disciplined by his father by being hit with a belt" and that Luis "motioned his arms" to demonstrate that act.

The court removed Luis from his father's custody, placed him with mother, and issued a case plan for each parent. Specifically, father was ordered to provide six random drug and alcohol tests, complete domestic violence and anger management courses, participate in individual counseling, and engage in

6

mental health services—namely, undergo a psychological assessment and psychiatric evaluation, as well as take all psychotropic medications that may be prescribed to him. His counsel objected only to the drug and alcohol testing and anger management course.

## VIII. Father's Appeal

Father filed this timely appeal.

## IX. Post-Appeal Developments[3]

While this appeal was pending, the juvenile court on July 21, 2023, terminated jurisdiction over Luis and issued an exit order granting mother sole legal and physical custody. Father was granted visitation with Luis for nine hours every other week, but the court ordered that the visitation be monitored because father had not completed his domestic violence course or individual counseling and had not undergone the mental health services. Father separately appealed that order.

## DISCUSSION

In this appeal, father argues that (1) the juvenile court's jurisdictional finding based on inappropriate physical discipline is not supported by substantial evidence, and (2) the court had no basis to order mental health services as part of his case plan.

## I. All of Father's Arguments Are Not Justiciable, Forfeited and/or Moot

### A. *Father's challenge to the single jurisdictional finding is not justiciable*

Because the juvenile court's exertion of jurisdiction over Luis rests on *two* bases based on father's conduct (namely,

---

[3] We grant the Department's request for judicial notice of the orders documenting these post-appeal developments. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

7

father's domestic violence against mother *and* his inappropriate discipline of Luis), and because father attacks only *one* of those two bases, nothing we decide here will affect the juvenile court's dependency jurisdiction over Luis because the unassailed basis independently supports that jurisdiction. This renders father's challenge academic, and hence nonjusticiable. (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*); accord, *In re M.R.* (2017) 7 Cal.App.5th 886, 896 ["'[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate'"]; *In re Madison S.* (2017) 15 Cal.App.5th 308, 329 [appeal is not justiciable where "no effective relief could be granted . . . , as jurisdiction would be established regardless of the appellate court's conclusions with respect to any such [challenged] jurisdictional grounds"].)

Father urges us to overlook the nonjusticiability of his challenge because the single jurisdictional finding he challenges "'could be prejudicial to [him] or could potentially impact the current or future dependency proceedings,'" or "''could have other consequences for [father], beyond jurisdiction.'"" (*In re D.P.* (2023) 14 Cal.5th 266, 283, 285 (*D.P.*).) Specifically, father argues that the finding of inappropriate physical discipline had a prejudicial impact because, in his view, it is "reasonably probable" that this finding "was the predominant factor leading to the" juvenile court's dispositional order limiting father to monitored visits. We disagree. At the time this third dependency case *began*, an exit order already existed limiting him to monitored visitation based on his domestic violence toward mother and his refusal to address it; *that* was why the court ordered monitored visitation as part of the dispositional order in this case (which is the third to involve domestic violence). What

8

is more, father's claim that he was prejudiced by being limited to monitored visits in the dispositional order rings hollow given that he does not even challenge that aspect of the dispositional order on appeal.

**B.** ***Father's challenge to the dispositional order is forfeited***

Because father never objected to the juvenile court's imposition of mental health services when it announced father's case plan (while objecting to other aspects of the plan), father has forfeited his challenge to that aspect of the plan. (*In re Daniel B.* (2014) 231 Cal.App.4th 663, 672 [an appellant forfeits a challenge to a ruling "'if an objection could have been but was not made in the trial court'"]; see also *In re Urayna L.* (1999) 75 Cal.App.4th 883, 886 [parent forfeited challenge to adequacy of adoption assessment by failing to object below].) Father urges that substantial evidence challenges cannot be forfeited, but this is irrelevant because father is challenging the reasonableness of these services against the backdrop of the case, not the substantiality of evidence.

**C.** ***Both of father's challenges in this appeal are moot due to the subsequent termination of jurisdiction***

Because father's challenge to one of the two jurisdictional findings is aimed at terminating jurisdiction based on that finding, and because a parent is no longer required to complete a case plan after jurisdiction terminates, the juvenile court's subsequent termination of jurisdiction in this case means that this court can no longer grant father any effective relief. This renders father's appeal moot. (*D.P.*, *supra*, 14 Cal.5th at p. 276 ["A case becomes moot when events "'render[] it impossible for [a]

9

court, if it should decide the case in favor of [the appellant], to grant him any effect[ive] relief"'"'].)

Father urges us to overlook this mootness because (1) the court's sustaining of the allegation that Luis experienced "unreasonable pain and suffering" from father's inappropriate physical discipline "reasonably could impact future family court custody determinations," and (2) the court terminated jurisdiction over Luis *in part* because father had not completed the mental health services portion of his case plan. Again, we disagree. The allegation regarding "unreasonable pain and suffering" is unlikely to have *any* effect on future family court custody determinations because it is the proverbial drop in the bucket compared to the deluge of findings and criminal convictions regarding father's repeated incidents of domestic and other violence. And father's assertion that the juvenile court's termination of jurisdiction in this case was based upon his failure to complete mental health services is entirely speculative—and, again, somewhat hollow given that father himself has been asking for the termination of jurisdiction for wholly different reasons from the very beginning of this case.

\* \* \*

Notwithstanding these significant procedural defects, we will reach the merits of father's challenges.

## II. Challenge to Inappropriate Physical Discipline Jurisdictional Finding

Dependency jurisdiction under subdivision (b)(1) of section 300 requires proof, as relevant here, that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm . . . , as a result of the failure or inability of the child's parent . . . to adequately protect [him]." (§ 300, subd.

10

(b)(1).)  Where, as here, the parent's alleged failure to supervise arises from his resort to inappropriate physical discipline, the Department must prove that (1) the parent engaged in inappropriate physical discipline that (2) gives rise to a substantial risk that the child will suffer serious physical harm. (*Ibid.*; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 820, overruled on other grounds in *In re R.T.* (2017) 3 Cal.5th 622.)  Because parents in California have ""a right to reasonably discipline [their] child and may administer reasonable punishment"" (*In re D.M.* (2015) 242 Cal.App.4th 634, 640-641 (*D.M.*)), the juvenile court must assess whether the discipline at issue has crossed the line separating reasonable and appropriate parental discipline (which will not support dependency jurisdiction) from inappropriate "parental discipline" (which will).  (*Id.* at p. 641.)  Whether that line has been crossed in a particular case "turns on three considerations: (1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is 'necess[ary]' (that is, whether the discipline was 'warranted by the circumstances'); and (3) 'whether the amount of punishment was reasonable or excessive.'"  (*Ibid.*)

We review a challenge to a jurisdictional finding for substantial evidence.  (*I.J.*, *supra*, 56 Cal.4th at p. 773.)  That is, we ""determine if there are sufficient facts to support the findings"" of the juvenile court by ""review[ing] the record in the light most favorable to the court's determinations"" and ""draw[ing] all reasonable inferences from the evidence to support"" the court's findings.  (*Ibid.*)  We may not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.  (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 135-136.)

11

Substantial evidence supports the juvenile court's finding that father's use of a belt to discipline five-year-old Luis, leaving marks on his body, was inappropriate physical discipline that subjected Luis to serious physical harm or, at a minimum, a substantial risk of such harm. (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 437-438 [parent's use of a belt on a three year old's body that left marks on one occasion; jurisdiction appropriate]; see also *In re A.E.* (2008) 168 Cal.App.4th 1, 4 ["[s]mall children are not to be hit with hard objects, especially to the point of leaving black and blue bruises"].)

Father responds with four arguments.

First, father argues that Luis did not provide enough details to enable the juvenile court to conclude that the use of a belt was inappropriate physical discipline. Specifically, father complains that the Department did not present evidence on how frequently father used a belt on Luis, the circumstances under which father used the belt, what types of marks resulted from the belt, where they were on his body, and whether they caused him pain. While helpful, such detail is not mandatory. Luis's report relayed that father disciplined him with a belt hard enough to cause marks when Luis was five years old; the juvenile court could reasonably infer from this report that this type of physical discipline—on a five year old—was not warranted, and that the use of the belt caused Luis pain. This means that father did more than inflict a "spanking to the buttocks" (§ 300, subd. (a)), and more than the types of discipline found insufficient to warrant dependency jurisdiction in other cases (e.g., *In re Joel H.* (1993) 19 Cal.App.4th 1185, 1191, 1201 [parent spanked child on butt with open hand]; *In re Isabella F.* (2014) 226 Cal.App.4th

12

128, 131-133, 138-139 [parent scratched daughter's face and earlobe with fingernails during a one-time altercation].)

Second, father argues that there is insufficient evidence that Luis suffered "serious physical harm." That is not *required*. The statute requires only a showing of *substantial risk* of such harm, and for good reason: Courts should not be required to wait for a child to suffer serious physical harm when the risk of that harm is substantial. (*I.J.*, *supra*, 56 Cal.4th at p. 773 ["'The court need not wait until a child is . . . injured to assume jurisdiction'"]; *In re R.V.* (2012) 208 Cal.App.4th 837, 843 [same].)

Third, father argues that Luis's initial report of abuse, by itself, is insufficient to establish that the abuse happened in light of Luis's later recantation and his parents' denials of abuse. Father is wrong. (*DeNike v. Mathew Enterprise, Inc.* (2022) 76 Cal.App.5th 371, 381-382 ["The testimony of a single witness may constitute substantial evidence as long as it is not physically impossible or inherently improbable"]; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 ["Evidence from a single witness, even a party, can be sufficient to support the trial court's findings"]; Evid. Code, § 411.) For this reason, we decline father's invitation to reweigh the evidence. And even if we accepted it, we see no reason to depart from the juvenile court's implicit rejection of father's account that he—as a man who has a documented history of resorting to punching and slapping people and using objects to damage property—nevertheless takes the uncharacteristically calm approach of discussing Luis's mistakes with him. (*In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["A parent's past conduct is a good predictor of future behavior"]; *In re E.B.* (2010) 184 Cal.App.4th 568, 576 ["'[P]ast violent behavior in a relationship is "the best predictor of future violence"'"], overruled on other

13

grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

Fourth and lastly, father argues that the Department—by alleging a violation of subdivision (b) of section 300 rather than subdivision (a)—somehow sidestepped the express limitation in subdivision (a) that "'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks.'" (§ 300, subd. (a).) Father is wrong for the simple reason that we have already held that this limitation applies to *all* of section 300's subdivisions—not only subdivision (a). (*D.M.*, *supra*, 242 Cal.App.4th at p. 640.) Further, the analysis set forth above accounts for this limitation and still concludes that substantial evidence supports the jurisdictional finding.

## III. Challenge to the Mental Health Services Portion of the Case Plan

A juvenile court "'has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly.'" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311 (*Briana V.*).) In that vein, the court may make "all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child." (§ 362, subd. (a).) Thus, a court's decision to require a parent to participate in court-ordered services will not be reversed unless that decision is arbitrary, capricious, or patently absurd. (*Briana V.*, at p. 311; *In re L.W.* (2019) 32 Cal.App.5th 840, 851.)

The juvenile court did not abuse its discretion in ordering father to complete a psychological assessment and psychiatric evaluation and to take all prescribed medications. Father has a history of abusing mother in the presence of Luis and the other children, which resulted in criminal convictions, subjected him to

14

a protective order and custody order, and triggered dependency proceedings that provided him access to services to treat his underlying issues. The record also indicates that father engaged in domineering and manipulative behavior aimed at controlling mother. Despite these interventions, father's unhealthy conduct persisted and Luis also became a victim of father's uncontrolled aggression. The risk of harm persists given that father flatly denies this conduct. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["'[d]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision'"]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].) Based on these circumstances, the court acted well within its discretion when it ordered father to participate in mental health services to address the root of his behavior.

Father responds with three arguments.

First, he argues that there was no evidence he suffered any conditions requiring mental health services, which is demonstrated by the fact that the Department did not seek dependency jurisdiction on the basis of any mental illness. (See § 300, subd. (b)(1).) The law is well settled, however, that a parent's case plan need not be tethered to a specific jurisdictional allegation. (*Briana V.*, *supra*, 236 Cal.App.4th at p. 311 ["The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition"]; *In re K.T.* (2020) 49 Cal.App.5th 20, 25 [juvenile court's "broad discretion" permits it to "formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings"].) Rather, in determining what type of services

15

would best serve the child's interests, the juvenile court "may consider the evidence as a whole." (*Briana V.*, at p. 311.) The evidence as a whole in this case supports the trial court's dispositional order.

Second, father argues that the juvenile court failed to set forth an explanation supporting its order requiring him to participate in mental health services. This argument lacks merit because specific findings are not required absent a statute so requiring (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1273; cf. *Yamada Brothers v. Agricultural Labor Relations Bd.* (1979) 99 Cal.App.3d 112, 123 [when statute "mandates a specific finding," "failure to make such a finding renders" the decision "fatally defective"]; *In re J.S.* (2011) 196 Cal.App.4th 1069, 1078 [same]), and section 362 here does not so require (accord, *In re Jasmine C.* (1999) 70 Cal.App.4th 71, 76-77 [upholding juvenile court's bypass of reunification services though it did not make specific findings that reunification would be detrimental to minor]).

Third and lastly, father argues for the first time in his reply brief that upholding the juvenile court's order in this case is tantamount to authorizing mental health treatment in *every* dependency case. Because the mental health services ordered by the court have a grounding in father's domineering, manipulative, and violent behavior aimed at controlling mother, we are unpersuaded that our holding will justify services in all cases, including cases without such conduct.

16

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST


17